Good morning. May it please the Court. Mr. Roldan Marin was convicted of being a prohibited person Counsel, you can remove your mask. I think that will help us hear you better and I think we can remain safe. Okay. Being a prohibited person in possession of a firearm after a jury trial. The government relied upon three alternatives under Section 922G. Being an unlawful user and addict in possession of a firearm. Having a prior misdemeanor conviction for a crime of domestic violence. And being subject to a no contact order. None of these alternatives can stand. Now today, I plan to address the issues in the brief in order of briefing as time allows, but I'm happy to answer questions on any issues raised. Turning to the first issue, the phrase Counsel, before you do that, it can be any one of the three, right? Correct. Okay. So isn't the no contact order so clear because it was served on him? Because he has a guilty, we have a guilty plea colloquy. Isn't that just so clear that we don't even need to talk about the other two? I would disagree, Your Honor. As far as sufficiency of the evidence of the no contact order, I think the strongest argument as to the failure of evidence by the government is that there was not evidence that the no contact order was still in effect at the time of the prohibited possession. The government put on evidence that it was imposed in 2016, but the order states that it is in effect until October 19, 2021, unless it is modified or terminated or otherwise extended. The government relies upon the Kepperti, the 10th Circuit case. That case is distinguishable because there the prosecutor had introduced the docket sheet for the case on where the no contact order was imposed. The government there established there's nothing further in this case to show that the no contact order has been dismissed, modified, or terminated in any way. Here, the jury was not provided with that kind of evidence to show that even if it was imposed in 2016 at the time of any alleged possession in 2019, that he was still under the terms of that no contact order. It's one of those law school professor types where you got to prove the negative. You know, most court judgments, some states even have statute to say that they're presumed valid almost forever. What's similar in this area of law that guides us? I think it matters here because it's a status-based offense. So because it's a status-based offense, it's important to note what conditions Mr. Roldan-Marin was under at the time that he possessed that firearm. So in this case, it's not enough to show that he might have had a no contact order in one time. Similar to our arguments as to the user in possession and being a user, the question is what did Mr. Roldan-Marin, what was his status at that point in time? Now, as far as similar under the law, I'm not sure. I don't think it's necessarily having to prove a negative. It's just that the government has to prove the status and it's not enough to show that there was no contact order imposed at one time. What evidence is there other than the order's entry to indicate that it might not still be in force? Mr. Roldan-Marin indicated he thought his probation was discharged so he thought he could possess a firearm. And I think that's where it gets confusing. And this is a knowledge requirement that is a lot more complicated for an individual as opposed to just being knowledge that you have a felony conviction. The no contact order was intertwined with the prior conviction that he was on probation for. It was based off of that conviction that he was on probation for. And the language when the probation was discharged, which it was discharged early, which I think is evidence that it could cause further confusion, it said that Mr. Roldan-Marin would no longer be held to answer for this crime. Now looking as a layperson, as Mr. Roldan-Marin is, when that no contact order is tied up with that probation for that offense and he's told you no longer have to answer for this crime, I think it's reasonable to state that it could be that he did not know that he was still subject to that no contact order. What about the extension at the time of the guilty plea? You know the extended language. Correct. Doesn't that cover it? I think there's an argument that it does. But I think that still because probation was discharged, that it puts a little more onus on the government to show that that no contact order was still in place. And again, question of knowledge. It's a complex question of knowledge as to Mr. Roldan-Marin. And there simply needs to be more that he knew that the no contact order was still in place. And in fact that it was still in place. Because as I've stated, I believe the government failed to establish that it was at the time of his possession of the firearm. I'll go next into the sufficiency of the misdemeanor crime of domestic violence. Again, similar to the question of the no contact order, as the Seventh Circuit said in the Drake's case, these knowledge questions to establish for the jury are fairly complex. And the definition of misdemeanor crime of domestic violence, as the second issue in the brief I think establishes, is a very complicated question. So the government here can't meet its burden under Rehave to show, well, he knew he shouldn't have a firearm. The government had to prove that he knew that he fell within that class, that he had a misdemeanor crime of domestic violence. Additionally, the government failed to establish the relationship requirement that for the definition of misdemeanor crime of domestic violence. So is it undisputed that there was a conviction for domestic violence? It's undisputed that there was an actual conviction. We dispute that it qualifies as a misdemeanor crime of domestic violence as a legal matter. Now, as far as that legal matter, we're not disputing that the relationship requirement was met. The argument is simply based off of the force clause and use of a deadly weapon. But at the same time, as far as sufficiency of the evidence, we are asserting that the government failed to establish the relationship requirement before the jury. Sotomayor, what do you think of the approach of the Eleventh Circuit in Johnson? Are you familiar with Johnson's Eleventh Circuit case, 2020? I am not. Okay. That's okay. Turning to the final alternative as to the sufficiency of the evidence, the government failed to establish that Mr. Roldanmarin was an unlawful user of a controlled substance, and he knew that he was an unlawful user. This ties in, and then I can go into the vagueness challenge, where the only evidence put on by the government was that Mr. Roldanmarin had a little bit of marijuana on him and a one-hitter. In many of the cases cited by the parties in this briefing, when we're talking about sufficiency of the evidence, there's more. There's an indication that officers smelled marijuana. A lot of times, prosecutors will put on witnesses to state, I knew the defendant. He used regularly. I was around him when he used in either the months or week, leading up to the alleged possession of a firearm. Here, we don't have any of that. What do you think of the Johnson case that has language respecting that possession of a small amount could be evidence of being a user? An inference of it. And I think that goes to, Johnson is distinguishable in that case, and that there was also testimony in that case from others that they knew the defendant in the Johnson case had used on a regular basis. But I think here, even looking to the circuit's model jury instruction, when talking about the inference of possession, the jury instruction still uses the language pattern of possession. It still requires more than on one instance. This isn't a question or is it? 922G3 isn't a statute that prohibits someone being under the influence of a controlled substance while possessing a firearm. It is, again, a status-based offense, which requires a user. Now, if this were a case where there was evidence, you know, multiple instances and the government had established there was multiple instances where Mr. Roldanmarin had possessed marijuana. In other words, for want of a better analogy, what's the old saying, a dog is entitled to his first bite? Essentially, Your Honor. I think it's not enough to show that an individual might have used or possessed once. It requires some... How many usages does it require? Well, that's, I think, where we get into the vagueness problem, is I just don't... It's unclear and it wouldn't provide Mr. Roldanmarin with any kind of notice as to how many uses would make someone cross that line into then being defined as a user or otherwise addicted to a controlled substance. But our position is, and that one instance of possession, again, not even establishing use, but one instance of possession is insufficient. On that point, I think the Augustine case cited in the brief from the Third Circuit is instructive. There, the defendant had smoked marijuana the night before and then, I think, engaged in crimes shortly thereafter the next day involving a firearm. There, the Third Circuit said, that's not enough. It requires this regular use, or as the language of the circuit uses, pattern of use to show that someone is in fact a user. And being a user in possession of a firearm. I want to briefly get into the legal argument challenging the misdemeanor conviction of domestic violence. Mr. Roldanmarin was convicted. I was general assault statute, as well as the enhancement provision discussing serious injury or use or display of a deadly weapon. The general assault statute is indivisible. As this Court stated in Quigley 708.1, which lists several alternatives for assault. It does not qualify because it involves threatened use of force. And under the plain language of misdemeanor crime of domestic violence, it doesn't involve threats of force. It requires the use or attempted use of force or the threatened use of a weapon. The enhancement provision similarly fails. Serious injury defined by the statute includes mental illness. Counsel, can we look at the charging document here or not? It is a proper Shepard document, Your Honor, yes. No, it said did use or display a dangerous weapon, right? Correct. Doesn't that settle it? No, Your Honor. Why not? So that would be an indication that it is divisible. But I don't think it necessarily rules the day. Our position is that that enhancement provision is indivisible. The strongest indicator is the penalty is the same. They're under the same subsection. And a lot of times the same conduct could fall under either an alternative. And I think Mr. Roldan-Marin's conduct from his prior conviction could arguably fall under either alternative in this case as well. But even if it is divisible and he was convicted under that provision, which the reference to that is in the trial information, but that subsection is overbroad. Use or display, when comparing that to the definition under the statute of misdemeanor crime of domestic violence, that requires threatened use of a deadly weapon. And even in the magistrate's report and recommendation in this case discussed, well, the language of Iowa's assault statute does not require use. It states use or display. And in the Hall case cited in our brief noted that under Iowa law, display only requires that the firearm or the weapon be held in a manner to be seen. Ms. Quick, you're well within your rebuttal time. You can continue if you like. No, that was exactly where I was wrapping up. So thank you. Hold on, counsel. Go ahead. Mr. Kahl? Thank you, and may it please the Court, Ms. Quick. My name is Andrew Kahl, and I represent the United States in this matter. I will try to go through the arguments in the order that Ms. Quick discussed them with the Court, starting with the noncontact order. The noncontact order was personally served on the defendant at the Johnson County Jail by Lieutenant Moses. She had no trouble communicating with the defendant, and she told him to speak with his lawyer about it if he had any further questions. Counsel, do you know the date of the service? The date of the service was October 19th, 2016. And then the service was returned the next day. That's in Exhibit 11. October 19th of 2016, right?  Okay. Go ahead. Proceed. Which becomes a critical date for a couple of reasons, particularly for the noncontact order. The noncontact order was to be in place for five years. Ms. Quick talked about the discharge of the probation. The probation was imposed also on October 19th, 2016, and it was discharged on October 9th, 2018. As Judge Jarvi pointed out in his order, the timeline for the noncontact order and the timeline for the period of probation were completely different timelines, and the jury was entitled to reject the argument that the defendant didn't believe he was still subject to that noncontact order based on the early discharge. When does the extended time start? Does the extended time start? You know what the word says. The no-contact order is extended for a period of five years. Does that time start back in 16, or does it start when he gets off probation? It starts in 16, and I think that at page 21 of Exhibit 11, the record specifically indicates a noncontact order is in effect until October 19th, 2021. Was there any legal authority on the expiration or what can trigger an expiration of such an order? I don't think there's anything in the record that would address that, and I am not aware of any Iowa legal authority. I mean, there probably is. Was there an Iowa legal authority that, as Judge Benton alluded to, that the presumption should be that it's still in effect and not otherwise? That would be our position. But you've got authority for that? A case. I do not have a case. A statute. The statute presumably says you may impose a period of time for a noncontact order. I presume that there are provisions to modify those noncontact orders, but I do not have the specific statute on the tip of my tongue, unfortunately. But I think ultimately on the noncontact order, it's not a particularly complex case of question of knowledge here. There were competing theories at trial about the effect of defendant's Exhibit A. The jury rejected that. That was a perfectly reasonable jury determination, and so that theory should stand. As to the misdemeanor crime of domestic violence, the argument here is that an enhanced domestic abuse crime under Iowa law is not a misdemeanor crime of domestic violence, and we go down this rabbit hole of trying to hold up the documents and the statutes against one another to determine whether they meet the federal statutory definition. I think the simplest way to look at it is to look at the domestic abuse enhancement provision. The enhancement indicates the intent to inflict serious injury or use or display of a dangerous weapon. Judge Jarvie found that to be divisible because of the structure of the statute because that was an umbrella term. These were umbrella terms that really didn't seem to have anything to do with one another. So if we view that as divisible, then the issue is the use and display of a dangerous or display of a dangerous weapon, in this case, a crowbar in that domestic violence incident. There was some discussion, and I think Judge Jackson discusses it in his order as well, about whether the display of a firearm can be non-dangerous despite pointing to the firearm. I think Judge Jarvie's phrase was that the likelihood of that being prosecuted by Iowa authorities was vanishingly small, that it was a, there was no non-theoretical, non-fanciful, non-theoretical circumstance under which that would be prosecuted in that manner. And we dealt with the Quigley case to stand for that proposition. With respect to the user in possession, I mentioned the Mack case as an example of a case supporting a jury drawing the inference of possession of marijuana. Here we have possession of a user quantity of marijuana together with the one hitter pipe, which is used for personal use. That was the testimony. The defendant stated when he asked, do you have anything? Well, I might have some weed. That's on the same day, temporal connection to the day, that not only he possessed the firearm at the time the marijuana was found during the search of him, the firearm was at his residence. Well, the Mack case, he had done it a month before, at least, and then the time he got arrested, right? Am I right about the facts of the Mack case? I believe those are — but I think Mack stands for the broader proposition that a jury can draw those kinds of inferences. Does it have the regular word that's in many of our opinions, that it must be regular? The use must be regular? Regular use? I'm blanking on whether the jury instruction included that term. I suspect that it did. Well, that's what our cases generally say, I think, is the word regular. What do we have here that indicates any regular use at all? The jury could conclude, based on the fact that he says he has weed, that he has a device that he can use multiple times for ingestion of marijuana, and that he has a small personal use quantity, the jury can reasonably conclude that this is not just a one-off. That seems to me to be a quintessential jury question, and I would — I started to say he has this marijuana in the one hitter at the time, temporarily, that the shotgun is of course, earlier that same day, the defendant was bringing that firearm outside and waving it around when a perfectly innocent civilian pulled into the wrong driveway while trying to return a pair of headphones to one of the defendant's neighbors. And again, that's going to be the temporal proximity. Well, do you have any other cases other than the Mack case that was just mentioned indicating any duration or frequency of number of incidents required to constitute regular use? No, I think Mack is the closest case on point that we have. I know it's an out-of-circuit case, but you did not reply to the Augustine case from the Third Circuit, I don't think. Correct me if I'm wrong. That's probably correct. Okay. What do you have to say about the Augustine case? Counsel mentioned it again here at argument. I am not having immediate recall on the Augustine case. Okay. It's the Third Circuit case. Go ahead. And I apologize for that, Your Honor. Go ahead. I would like to address the sentencing issue a little bit before I run out of time. That, too, had to do with whether the misdemeanor crime of domestic violence was a crime of violence under the sentencing guidelines. Judge Jaria found that it was under the force clause. We have argued, as we've charted this out, that it also could qualify as aggravated assault under the enumerated offense clause. But what is abundantly clear here is that Judge Jarvi would have imposed a sixty-six month sentence in any event. Judge Jarvi talked about the incident with the mix-up on the headphones and the defendant waving a firearm around on indigo court as a particularly scary situation. It was noted that this defendant had not one but two domestic violence convictions in the past. There was the one that he pleaded to in October of 2016 that we've been talking about. There was another domestic violence conviction involving a domestic violence fact pattern. I think he pled guilty to violating some non-contact orders earlier in that same year of 2016. That's described in paragraph 49 of the pre-sentence report, and we put documentation into the record of the sentencing hearing to verify the facts of that case. We find ourselves, as I said earlier, with an odd situation about whether a domestic abuse assault is a misdemeanor crime of domestic violence, which surely was the congressional intent in passing this statute. I think I tend to agree with Judge Benton that the path of least resistance in charting this out and the various flowcharts that we've developed in trying to understand this is the non-contact order. There is no claim that the non-contact order provision is in any way defective or vague or doesn't qualify applying the categorical approach. The evidence is strong, and that in and of itself is sufficient to support the conviction. We do believe, for the reasons we've mentioned here this morning and in our brief, that all three theories are sound. The jury found those theories all beyond a reasonable doubt. Finally, I will just very briefly address this argument about the allegedly improper oral rebuttal argument by the government prosecutor, where she pointed out that the presumption of innocence wasn't what it was at the beginning of trial, and I think that is an accurate statement in the ---- I thought in your brief you said it was improper. Well, LaFontaine says it's okay to point out that the presumption, that a defendant doesn't stay presumed. In Crumley, the circuit talks about how the presumption is rebutted rather than being rendered its guilty verdict. It's a very, very fine line between rebutted versus removed on a plain error standard and given that we're on plain error and given the clear instructions by the district court to the jury about what the presumption of innocence was and that the statements of the instructions of the law, we don't think that that should cause any reversal of the conviction. I see I am out of time, and we ask that the convictions be affirmed. Thank you, Mr. Kahl. Ms. Quick, your rebuttal? Well, hang on one moment. Ms. Quick. I would first like to address the discussion of the statutory basis for the no-contact order. This comes from Iowa Code section 664A.5, and the language of that I think further strengthens our argument that the government failed to prove that at the time of the firearm possession, Mr. Roldan Maran was still under a no-contact order. That language of that statute doesn't say, a defendant who's convicted of this crime, five year, no contact order, that's it, no ifs, ands, or buts. That statute gives district court judges the authority to do up to five years, stating that state district court judges can otherwise modify or terminate it. So it would be a much more difficult argument, I think, for Mr. Roldan Maran if it was a mandated and required five-year no-contact order to then come up and say, well, they didn't prove it was still in effect when it would be required to. But here, when that has the language both in the statute and in the order itself that was provided to the jury, saying that it could be terminated, the government has failed to establish that it was still in effect, as the prosecutor did in that Caparete case discussed earlier, that it's failed to establish status at the time of the possession. Well, counsel, since there really is no evidence of whether the order has ceased to be in effect, the jury is pretty much left with its credibility call of the position the defendant takes. And I know the defendant is not testifying before the jury, but it seems the jury is given the responsibility to decide if the contact order is ended. I think this issue is more because it is a legal status question. It's not a question of credibility. Can we just assume it's still in effect? It goes down to the burden of proof on the prosecutor to establish that Mr. Roldan Maran still had this status. And it's not the jury wasn't just allowed to assume, well, it must still be in effect. The government needed to prove both that Mr. Roldan Maran was still subject to the no-contact order. What would there be to indicate that the inertial effect of the imposition of the order is somehow to be ignored? That it's not enough to show that it was imposed in 2016? Why our position why that isn't enough? To show why once put in effect, the order remains in effect until acted upon by an outside force. Essentially the way the laws of physics work, you put an order in effect, if it says it is in effect until a certain period or in effect indefinitely, it remains so until there's an indicator that it ceases to do so. I think that it becomes necessary for the government to establish that it is still in effect when it's not just the crime of you had a no-contact order that was in effect. This is a question of was that no-contact order still in effect at the time that Mr. Roldan Maran possessed the firearm? So the fact that a couple of years before there was a no-contact order imposed, especially when you have in that language that was presented to the jury, it could be terminated, it could be modified in some way that could somehow take it out of the legal definition of a no-contact order. But the government can't just establish a couple of years ago he had a no-contact order. It's possible. It's still within the timeline, but that's enough to establish that a couple of years later when he had a firearm, you can assume it was still in effect. Our position is that that's, the government cannot do that. The government needed to do more, as prosecutors have in different cases, to establish that the no-contact order was still in effect. Thank you, Ms. Quinn. Thank you. Thank you, Mr. Call. I thank both counsel for the argument you provided to the court this morning. In supplementation to the briefing that's been submitted, we'll take the case under advisement.